UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| S.R. HOLDING COMPANY, INC., d/b/a EMERGENCY DISASTER SERVICES, | )<br>)<br>) Civil Action No. 5:07-106-JMH |
| Plaintiff, | ) |
| v. | )<br>) **MEMORANDUM OPINION AND ORDER** |
| KELLOGG, BROWN & ROOT SERVICES, INC., | )<br>) |
| Defendant. | ) |

** ** ** ** **

This matter is before the Court on Defendant's motion for summary judgment [Record No. 7] and Plaintiff's motion for summary judgment, or in the alternative, motion for extension of the discovery deadline [Record No. 9]. The Court being sufficiently advised, the matter is now ripe for review.

### I.   Factual Background

In the wake of Hurricane Katrina, Defendant Kellogg, Brown, and Root Services, Inc. ("KBR"), was awarded a general contract to provide emergency disaster services to relief workers in the New Orleans area. KBR entered into a subcontract (the "Contract") with Plaintiff S.R. Holding Company, Inc. d/b/a Emergency Disaster Services ("EDS") under the terms of which EDS was to provide emergency meal services. The dispute at issue in this case concerns the guaranteed minimum number of

1

persons to be served meals each day. EDS contends they were guaranteed payments for serving meals to a minimum of 500 persons per day. KBR compensated EDS for serving meals to a minimum of 150 persons per day, and contends that the Contract clearly provides for a guaranteed minimum of 150 persons per day. Arguing that the Contract was ambiguous and did not reflect the intention of the parties, EDS moves for summary judgment. Conversely, KBR argues that the clear language of the Contract requires an award of summary judgment in its favor.

## II.  Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Analysis

**A.  Choice of Law**

As an initial matter, the Court must address the choice of law provision contained in section 9.2 of general provisions of the Contract. Said provision provides that the Contract "shall be construed and governed by the laws of the Commonwealth of Virginia." Arguing that there is no connection between the subject matter of the contract and

the laws of Virginia, Plaintiff urges the Court to apply Kentucky law. The Court agrees with Defendant that there is effectively no choice of law issue, as the Plaintiff's claims fare no better under the laws of one Commonwealth than under the other; however, as the Court must apply the law of one Commonwealth to the facts of this case, the Court's choice of law analysis follows.

When analyzing contractual choice of law provisions, the Court applies the framework found in Section 187(2) of the Restatement (Second) of Conflict of Laws. *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000)(holding that "in a standard commercial breach-of-contract case such as we have here, the Kentucky courts would choose to adopt § 187 of the Restatement as their analytical framework for addressing a contractual choice-of-law clause.") Section 187(2)(a) of the Restatement provides that a contractual choice of law provision will be enforced unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."

In this instance, the Court finds that the Commonwealth of Virginia has a substantial relationship to the transaction, and there is no more reasonable basis for the parties' choice. The subject matter of the Contract at issue in this case, which is in fact a subcontract, was federally-funded disaster relief. The general contract specified that Virginia law controlled its terms, accordingly, it is logical that the subcontract should also be controlled by Virginia law. Additionally,

4

there was no more logical decision, as the Contract touched several states, in that EDS is a Kentucky company, KBR's corporate headquarters is in Texas, the Contract required performance in Louisiana, and EDS vehicles were being deployed from several states, including Florida and Kentucky.  The choice of law provision contained in the Contract controls and Virginia law applies.

**B.  Plaintiff's Claims**

In Virginia, "[w]hen a court considers a written contract, the intent of the parties is presumed to be embodied in the contractual terms. If those terms are clear and unambiguous, it is the duty of the court to enforce them."  *Foreign Mission Bd. of Southern Baptist Convention v. Wade,* 409 S.E.2d 144, 146 (Va. 1991)(citing *Winn v. Aleda Constr. Co.,* 315 S.E.2d 193, 195 (Va. 1984)).  Virginia's highest court has held that it is inappropriate to look beyond the four corners of a complete, unambiguous agreement.  *Lerner v. Gudelsky Co.,* 334 S.E.2d 579, 584 (Va. 1985)("We adhere to the "plain meaning" rule in Virginia. Where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties.")

Applying Virginia law to the instant case, the "plain meaning" of the Contract is that KBR and EDS agreed to a 150 person minimum for each day services were provided.  Section 2.0 of the Contract, entitled "Scope of Work," states that EDS shall provide "turn key food service

150 to 525 plus personnel." In accord with Section 2.0's 150 person minimum is Exhibit D to the Contract, which states that there is a "150 personnel per day minimum" and that "KBR does not guarantee anything above minimum." From the four corners to the Contract, it is clear that the parties agreed to a 150 person minimum.

EDS argues that the Contract should be reformed, as there was a mutual mistake between the parties as to the daily minimum. Pointing to a reference to 200 meals, as found in Section 2.0 of the Contract, EDS argues that the Contract is ambiguous on its face. EDS also points to several e-mails between persons at KBR and EDS as indicating that the parties agreed to a 150 person minimum for only the beginning and ending stages of the service, with a 500 person daily minimum applied to the remainder of the Contract. EDS also emphasizes the hurried nature of the Contract's formation and the extreme haste created by the emergency nature of the services to the provided.

The reference to 200 meals found in Section 2.0 does not render the Contract ambiguous. After stating the 150 minimum, Section 2.0 goes on the state that KBR requests "200 meals for the first serving Wednesday 7 September 2005 and 200 for Thursday 8 September 2005." This provision did not alter or render ambiguous the Contract's daily minimum, as it was simply provided to comply with the requirement that a head count for meals be provided to EDS at least 24 hours in advance. (See Exhibit D to Contract). Plaintiff also points to several provisions in the Contract which reference a construction project as evidence that the

6

Contract is ambiguous. While the subject matter of this Contract was emergency food services, not construction, the provisions referencing construction have no effect on the 150 person daily minimum contained in Section 2.0.

Absent a finding of ambiguity on the face of the Contract, the Court is not permitted to look beyond the four corners of the document to determine the parties' intent. *Price v. Taylor*, 466 S.E.2d 87, 89 (Va. 1996)("[t]he general rule in Virginia is that parol evidence of prior stipulations or oral agreements is inadmissible to vary, contradict, or explain the terms of a complete, unambiguous, unconditional written contract."); *see also Foreign Mission Bd.*, 409 S.E.2d at 146 ("[w]hen a court considers a written contract, the intent of the parties is presumed to be embodied in the contractual terms. If those terms are clear and unambiguous, it is the duty of the court to enforce them."). There is no ambiguity on the face of this Contract. Accordingly, the Court will not look beyond the Contract itself to ascertain the intent of the parties. While it may be true that the Contract was negotiated and executed in haste due to the emergency nature of the services to the provided, it does not change the fact that this Court must enforce the Contract as written.

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's claim for reformation of the Contract due to

7

mutual and/or unilateral mistake.[1]  Defendant is also entitled to summary judgment on Plaintiff's promissory estoppel claim, as Virginia does not recognize the doctrine of promissory estoppel.  *W.J. Schafer Assocs., Inc. V. Cordant, Inc.,* 493 S.E.2d 512, 521 (Va. 1997)("[W]e hold that promissory estoppel is not a cognizable cause of action in the Commonwealth.").

Regarding Plaintiff's fraudulent inducement claim, Defendant states that Plaintiff cannot offer proof of positive and material misstatements by Defendant to support Plaintiff's claim for fraud in the inducement. Plaintiff responds that discovery is necessary before the claim can be resolved, but fails to offer any supporting affidavits as required by Fed.R.Civ.P. 56(f) and simply asks the Court to extend the discovery deadline and compel discovery.  The Court finds the requested measures unnecessary, as it has determined that the complete, unambiguous Contract must be enforced as written.  Accordingly, Defendant is also entitled to summary judgment on Plaintiff's fraudulent inducement claim.

### IV.  Conclusion

For the foregoing reasons, **IT IS ORDERED**:

1) That Defendant's motion for summary judgment [Record No. 7] be, and the same hereby is, **GRANTED**; and

2) That Plaintiff's motion for summary judgment, or alternatively,

---

[1] Additionally, the Court notes that Virginia law does not contemplate reformation or rescission of a contract on the grounds of unilateral mistake.  *See Langman v. Alumni Ass'n of the Univ. of Virginia*, 442 S.E.2d 669 (Va. 1994).

to extend the discovery deadline and compel discovery [Record No. 9], be, and the same hereby is, **DENIED**.

This the 14th day of February, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge